Gerald J. Beldock, J.
Defendant has been charged with the crimes of criminal sale of a controlled substance in the second degree (Penal Law, § 220.41, subd 2, class A-II felony), conspiracy in the first degree (Penal Law, § 105.15, class B felony), and grand larceny in the second degree (Penal Law, § 155.35, class D felony) based on events occurring at 1375 East 105th Street, Brooklyn, New York on October 16, 1973.
*751 This matter was tried before the court without a jury. Prior to the commencement of the trial, the People moved to dismiss the grand larceny count. That motion was granted by the court.
On October 16, 1973, pursuant to what was designated as buy operation "485”, undercover police officers paid one Harriet Schwartz $3,800 for amphetamines at 1375 East 105th Street, Brooklyn, New York. She told the police officers that the drug would be outside in a garbage can in the driveway adjacent to her premises. Thereafter on that date defendant was observed with another unknown male entering and leaving the driveway. Upon being informed by Harriet Schwartz that the drugs paid for were in the garbage can, the undercover police officers retrieved the alleged drugs at the designated place.
A subsequent laboratory analysis of the item purchased was found to be negative for controlled substance.
Defendant contends that he cannot, as a matter of law, be convicted of a sale or offer to sell a controlled substance, i.e., methamphetamine which in reality turns out to be a noncontrolled substance. Defendant further contends that he has been selectively prosecuted for the sale of a narcotic drug constituting a denial of equal protection of the law.
The first count of the indictment, relating to sale of a controlled substance (methamphetamine), should be dismissed, in that the People have not only failed to prove that a controlled substance was knowingly sold or possessed, but the People’s own lab report indicates that there is no controlled substance present.
As to the first count, the charge is brought pursuant to subdivision 2 of section 220.41 of the Penal Law which in pertinent part reads as follows:
"A person is guilty of criminal sale of a controlled substance in the second degree when he knowingly and unlawfully sells: * * *
"one or more preparations, compounds, mixtures or substances of an aggregate weight of one-half ounce or more containing methamphetamine.”
Subdivision 1 of section 220.00 of the Penal Law defines "sell” as follows: " 'Sell’ means to sell, exchange, give or dispose of to another or to offer or agree to do the same.”
The District Attorney presumably argues that when the *752 preceding two sections are read in tandem "offer” or "agreement” to sell a controlled substance with an aggregate weight of one-half or more ounces of methamphetamine constitutes guilt of criminal sale of a controlled substance in the second degree regardless of the actual weight or nature of the substance offered and regardless of whether any substance of any kind or any weight whatsoever is observed, or recovered, or ever existed.
The People, by such a statutory interpretation, would eliminate the requirement of a physical corpus. The People presumably maintain that the element of knowledge-belief by the seller, whether mistaken or not, that he possesses or has control over a corpus containing a narcotic drug — if proved, precludes the necessity of providing a physical corpus.
In the instant case, the only physical evidence consists of a quantity of a patently innocuous material. Therefore, the prosecution’s argument demands that this court defy hundreds of years of precedent, precedent which held that a man’s intent was to be ascertained through assessment of his deeds. Here the actual sale of a nonnarcotic simply contradicts the concept of "knowing offer”.
This court is of the opinion that subdivision 2 of section 220.41 of the Penal Law should be read to permit a finding of guilt only where there be a physical corpus — a substance weighing one-half or more ounces containing methamphetamine.
In the instant case, the offer and subsequent transaction that occurred are not within the ambit of the drug laws, in that the alleged physical corpus was fully recovered and contained no controlled substance. Certainly investigation of the contents of the physical corpus herein was proper, but prosecution for a sale of a controlled substance after a negative laboratory report is, to this court, patently improper.
The mischief proscribed is the possession and sale of substances deemed to be harmful by the Legislature, and in some cases that mischief is deemed to warrant a life sentence with varying minimum penalties. There is no basis for extracting from the Legislature’s concern with narcotics traffic the tenuously extrapolated premise that it desired to levy against con artists a penalty indistinguishable in harshness from those suffered by drug sellers.
The People have based their case in essence upon a literal *753 reading of the word "offer”, insisting that the mere offer to sell narcotics is sufficient basis for criminal liability albeit the very material transferred has no narcotic content whatever. This court is of the opinion that this is clearly not within the ambit of the statutory scheme.
The applicable statutes in the instant case speak of a knowing offer, and that knowledge must extend to each and every part of the transaction alleged to have been criminal. Thus, defendant must have known that he was offering to sell a narcotic drug if he is to suffer criminal penalty. However, the knowledge by defendant that the substance sold was nonnarcotic (hay fever medicine) coupled with the delivery of that nonnarcotic substance militates against a finding of such knowledge (see People v Carelock, 58 AD2d 996).
It is well settled that knowledge of the harmful character of the material transferred — even where a narcotic drug has in fact been delivered or possessed — is an absolute requisite to a finding of guilt (People v Reisman, 29 NY2d 278, 285; People v Camacho, 47 AD2d 527; People v Santiago, 45 AD2d 1041; People v Patello, 41 AD2d 954). It therefore follows that where there is nothing more than the transfer of an innocuous substance the People have failed in proving their case.
This court is of the opinion that even before an attempt at committing the crime charged in the instant indictment (criminal sale of a narcotic drug) there had to be a completion of certain elements of the crime, that is, the offier or attempted transfer of a narcotic drug. However, where it has been conclusively shown that the substance transferred was nonnarcotic, and this court finds no precedent to the contrary, or as an aid to the court to thinking otherwise, this court would hold that a narcotic drug be in existence as an essential element of the crime of criminal sale of a controlled substance in the second degree before criminal liability will attach (see People v Boscia, 83 Misc 2d 501). The court has combed through numerous decisions in this State involving the sale of drugs and not a single case of record appears where a defendant has been found guilty of the sale of a narcotic drug when in fact the substance was nonnarcotic.
The People’s reliance upon People v Soto (Kings County, Index No. 2833/74) is misplaced. In Soto, defendant was found not guilty after a nonjury trial (Hon. James H. Shaw, Jr.) of the crime of criminal sale of a controlled substance in the first degree, the court finding a reasonable doubt as to that count *754 in the indictment, the substance sold having been found to be nonnarcotic.
Defendant’s claim that he has been selectively prosecuted is without merit.
In People v Goodman (31 NY2d 262, 268) the court stated: "While it is true that intentional or purposeful discrimination in the administration of an otherwise nondiscriminatory law violates equal protection (Yick Wo v. Hopkins, 118 U. S. 356; People v. Friedman, 302 N. Y. 75; People v. Utica Daw’s Drug Co., 16 A D 2d 12), it must be borne in mind that one who alleges discriminatory enforcement must meet the 'heavy burden’ of showing 'conscious, intentional discrimination’ (People v. Utica Daw’s Drug Co., 16 AD 2d, at p. 19), or a consciously practiced pattern of discrimination (People v. Friedman, 302 N. Y. 75, supra). The conscious exercise of some selectivity in enforcement of the law is not in itself a constitutional violation. (Oyler v. Boles, 368 U. S. 448; Matter of DiMaggio v. Brown, 19 N Y 2d 283.)”.
In order for defendant to prevail with respect to this contention, it must be shown that there was an invidious or bad faith selection of the defendant as a target. The record before this court is barren of any evidence that defendant has been denied equal protection of the law because of a possibly discriminatory enforcement of subdivision 2 of section 220.41 of the Penal Law (criminal sale of a controlled substance in the second degree). This court concludes that defendant has not sustained the very heavy burden of showing a "conscious, intentional discrimination” or that a "pattern of discrimination has been practiced against him” (see, i.e., People v Eason, 40 NY2d 297, 302; cf. Yick Wo v Hopkins, supra; see, also, People v Utica Daw’s Drug Co., supra).
With respect to the conspiracy count in the indictment, it is well established that to constitute the crime of conspiracy there must be a corrupt agreement between two or more individuals entered into with a criminal intent to do an unlawful act as a means to an end, followed by an overt act to effect the object of the agreement (People v Bauer, 32 AD2d 463, 467, affd 26 NY2d 915; People v Harris, 294 NY 424, 433; People v Tavormina, 257 NY 84; People v Flack, 125 NY 324).
The agreement to sell the substance having been made to the undercover police officers by Harriet Schwartz and not the defendant herein, the tenor of prior and subsequent contacts by defendant with the police officers and the knowledge by *755 defendant that the substance was "hay fever medicine” prior to the alleged sale all tend to prove the lack of the essential element of intent necessary to convict for conspiracy.
The uncontradicted testimony of the defendant clearly shows that he knew the nature of the drugs to be a noncontrolled substance, and therefore the court finds the People have not proven guilt beyond a reasonable doubt.
Accordingly defendant is found not guilty of both counts in the indictment.